THE STATE OF CONNECTICUT vs. HAMPDEN TRIPLETT
ALIAS GRANVILLE H. TRIPLETT.

Third Judicial District, New Haven, June Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

Upon a prosecution for a conspiracy to commit rape, and for an assault with intent to commit rape, the State claimed that the accused, a New York lawyer, desiring to secure evidence against the wife of

his brother in order to defeat her suit in New York for a separation from her husband for his cruelty and nonsupport, entered into a conspiracy with others to lure her to New Haven on a pretended business errand, and to have one of the conspirators ravish her there forcibly and against her will, while the others were suddenly to break into the room and discover her in that situation. No evidence was offered that the accused personally assaulted the woman, and his guilt, if any, was that of an accessory. Upon an appeal from a conviction upon each of these charges, it was *held* that however much the accused might merit severe punishment for the part he had taken in the conspiracy, the State had palpably failed to prove that the essential element of an intent to rape was involved in any combination of the parties, or that the accused aided or abetted in any act which had that design in view.

Argued June 7th—decided July 6th, 1917.

INFORMATION in three counts charging (1) a conspiracy to commit assault, (2) a conspiracy to commit rape, and (3) an assault with attempt to commit rape, brought to the Superior Court in New Haven County and tried to the jury before *Gager, J.;* verdict and judgment of guilty upon the second and third counts, and appeal by the accused. *Error, judgment set aside and new trial ordered.*

Dorothy A. Triplett, residing in New York City, is the wife of John E. Triplett, a clergyman residing in New Jersey. The accused is the brother of John E. Triplett, and a lawyer resident of and practicing in New York City. In February, 1914, Mrs. Triplett left her husband, taking with her their child, and went to reside with her mother in New York. A few months later she began proceedings in the courts of New York for a separation from her husband, upon the ground of his cruel and inhuman treatment and nonsupport of her, for the custody of their minor child, and for an allowance for the support of herself and child. The accused, acting in his brother's interest, took steps to defeat that proceeding and employed one, known in the present case by the name of Wilson, to watch

Mrs. Triplett, and to secure evidence which might be used against her.

The State offered evidence to prove, and claimed to have proved, that the accused and Wilson conspired together to secure evidence touching Mrs. Triplett's chastity which could be so used, and to that end it was planned and arranged between them that Wilson, under the guise of a real-estate agent, should lure Mrs. Triplett to New Haven upon the false pretense that she was to meet a Mrs. Allen residing there or near there, who was a possible purchaser of a piece of property in Canada belonging to Mrs. Triplett's mother; that Wilson succeeded in arranging for a meeting between Mrs. Triplett and the pretended prospective purchaser at the Hotel Garde in New Haven, the former being accompanied by Wilson; that Mrs. Triplett, so accompanied, went to New Haven and to the hotel for the purpose of filling this pretended appointment; that upon their arrival at the hotel Wilson reported that Mrs. Allen had not yet arrived, and that they thereupon went into the dining-room; that Wilson thereafter left the dining-room upon some pretense, and went to the desk and registered himself and Mrs. Triplett as husband and wife under an assumed name, and received the assignment of a room; that meanwhile the accused and two New York men, whom he had employed for the purpose, known as Campbell and Donahue, had arrived at the hotel by prearrangement and taken a room; that at the time Wilson registered he conferred with Triplett, or one of his associates, as to the program which was to be followed; that Wilson returned to the dining-room and reported that Mrs. Allen had arrived and was in her room upstairs waiting for them; that Wilson and Mrs. Triplett then went, as the latter supposed, to meet Mrs. Allen; that Wilson showed the

way to the room which had been assigned to him; that as Wilson opened the door and Mrs. Triplett entered she found that no one was there to receive her and that the room was an unoccupied bedroom; that she then turned to leave, facing Wilson, who had followed her through the door; that as she was about to depart Wilson pushed her upon the bed and seized her violently to keep her there; that a vigorous struggle ensued, during which Mrs. Triplett was badly bruised and lacerated upon one of her legs and thighs over.a considerable area, bruised in her right arm, and her clothing in places torn; that while this struggle was proceeding Triplett and his associates appeared at the unlocked door, knocked and entered; that the struggle between Wilson and Mrs. Triplett then ceased, Wilson remarking, "I got her," and the accused replying, "I knew damn well you'd get her"; that Mrs. Triplett then passed into the hall, and out of the hotel to the station, where she later took a train for New York; and that the accused followed her downstairs, went to the desk, called the attention of the clerk to the occupancy of the room by a couple not man and wife, and later returned home.

The claim of the accused, overwhelmingly contradicted by the State's testimony, was that he, after having employed Wilson, began to suspect that Wilson had been unfaithful in that employment and that he had entered into illicit relations with Mrs. Triplett; that having overheard a telephone conversation between them making an appointment to go to New Haven by a specified train, he determined to follow them and hastily employed Campbell and Donahue to assist him in tracing their movements; that they succeeded in tracing them to the hotel and in locating them in a room which they visited, only to find Wilson and Mrs. Triplett in bed together and undressed.

*Spotswood D. Bowers,* for the appellant (the accused).

*Arnon A. Alling,* State's Attorney, with whom was *Walter M. Pickett,* Assistant State's Attorney, for the appellee (the State).

PRENTICE, C. J.   The defendant was convicted upon two counts, one for conspiracy to commit the crime of rape upon the person of Dorothy A. Triplett, and the other for an assault upon her committed with intent to commit rape.   The State made no claim that he personally participated in an assault upon Mrs. Triplett or performed any overt act in furtherance of such assault by another.   The overt acts which furnished the basis of the State's charge were committed by a person known in the case by the name of Wilson.   The accused's criminal liability, if liable he is as charged in the two counts, is that of an accessory.   No evidence was offered tending to show that Wilson ravished Mrs. Triplett.   There was evidence impressively establishing that he committed an assault upon her.   It was incumbent upon the State, therefore, if it would furnish a sufficient foundation for the defendant's conviction upon the last-named count, to establish beyond a reasonable doubt that Wilson's assault was made with the intent and purpose of ravishing Mrs. Triplett, and, if a conviction upon the first-named count was to be justified, to establish in like manner that any combination or conspiracy which may have existed between the accused and Wilson comprehended such ravishment within its scope and purpose.   In other words, it was essential to the State's successful prosecution of the defendant, under either of the two counts upon which conviction was had, that it be shown beyond a reasonble doubt that there was an intent or purpose on the part of the parties implicated in the affair under investigation, or some of them at least, that carnal

knowledge of Mrs. Triplett be had forcibly and against her will.

Were the evidence confined to the scene in the bedroom in the hotel where Wilson laid violent hands upon Mrs. Triplett, it might well be inferred that his purpose was her ravishment, but the exigencies of the State's case, which required that the accused be criminally connected with what there transpired, demanded that the evidence take a wider range. As a result we have in the record a disclosure of collateral matters and events vitally important to an intelligent understanding of the situation in which Wilson is found committing his assault, and throwing a flood of light upon the motive behind it and the end it had in view.

The story, as the State's evidence discloses it, is in all its details a long one, and need not now be rehearsed. It is sufficient to say that it shows no other motive behind the affair, and no other object sought by means of it, than the provision of a foundation for evidence derogatory to Mrs. Triplett's character for use in defeating her pending action against her husband, a brother of the accused, for a separation and support. The theory of the State was, and is, that the accused was desirous of obtaining such evidence, and to that end employed Wilson, Campbell and Donahue to carry out a carefully planned scheme, in accordance with which Wilson was to lure Mrs. Triplett to the hotel in New Haven and to a sleeping-room therein, on the false pretense of meeting there a lady on a business errand involving the sale of real estate, and the accused, accompanied by Campbell and Donahue, were to appear upon the scene following Mrs. Triplett's unsuspecting entrance to the room with Wilson.

Assuming that it was the moving purpose of the parties whom Mrs. Triplett faced upon this occasion to obtain evidence, or the foundation for evidence, in-

criminatory of her character, it is more than difficult to imagine how the addition of her ravishment to the discovery of her presence in the room alone with Wilson could either have added a feature beneficial to her husband's cause, or been thought that it would do so. The truth would not have helped, and perjury would have been furnished no better foundation for the desired testimony than her presence in the room supplied. Not only was there nothing to gain by the perpetration of a rape, but the very attempt at its perpetration threatened both disaster to the scheme, through the outcry and commotion that would be likely to result, and dire punishment for the offenders singularly open to detection. It is hard to imagine a more senseless and foolhardy thing for the accused and his associates to have planned to do, if they hoped for success in their imputed purpose, than that which the jury, in order to return its verdict, must have found that they planned and did. It is well-nigh unbelievable that a sane man, much less a trained lawyer, would, in order to carry out a plan devised for the purpose outlined, have permitted so foolish, superfluous and hazardous a feature to enter into it as that of the rape of the intended victim of it.

As far as the assault is concerned, the explanation that it was prompted solely by the exigencies of the occasion, in order that Mrs. Triplett might be detained in the room and found therein by the waiting and momentarily expected watchers, is far more plausible and reasonable than that it was the first step in a concerted attempt to commit rape. Her discovery in the room was, for the conspirators' purpose, as sufficient an outcome as any other produced by force could have been. That purpose was, as claimed by the State,—and no other involving the accused in criminal responsibility is apparent—the securing of a plausible

and workable foundation for testimony derogatory to Mrs. Triplett's character, to be used to defeat her cause against her husband. That foundation might be obtained by the discovery of outward suspicious conditions which might safely be left to speak for themselves before the trier, or it might be secured through the discovery of such conditions to be utilized in testimony which should weave around it manufactured details which would make a more explicit tale of wrongdoing. Her escape, before the prearranged arrival of those hovering near to entrap her, under circumstances themselves suspicious and susceptible of being embroidered into something worse than suspicion, would seriously threaten the successful execution of the plan which had been arranged. That fact must have been apparent to Wilson, and his resort to force to prevent her escape was not an unnatural consequence.

As one reads the repulsive story which the State's evidence presents with a striking array of proof, it is easy to see how the jury was influenced to return a verdict which would prepare the way for the infliction of severe punishment upon the defendant for the part he played in it. Although we may share in no slight degree the jury's natural feelings of disgust and repugnance at what the evidence appears clearly to disclose was done to Mrs. Triplett, we are bound to say that an examination of it shows that, whatever else it satisfactorily establishes, there is in it a palpable failure of proof, not to say of proof beyond reasonable doubt, establishing that the essential element of an intent to rape was involved in any combination entered into by the parties charged therewith, or that the accused assisted, aided or abetted in any act which had that design in view. Without such proof a conviction upon either count was without justification.

In view of our conclusions, we have no occasion to consider the sufficiency of the remaining somewhat numerous assignments of error.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.